IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW YORK LIFE INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-5430 |
| | : | |
| PAULETTE JONES and NIA SIMMONS | : | |

**MEMORANDUM OPINION**

**Henry, J.**                                                                                                  **August 19, 2025**

This case comes before the Court on Interpleader Plaintiff New York Life Insurance Company's ("New York Life") Complaint for Interpleader Relief against Interpleader Defendants Paulette Jones and Nia Simmons, in which New York Life asks the Court to resolve Jones and Simmons's allegedly adverse, competing claims to a life and dependent insurance policy.

I. **BACKGROUND**

The relevant facts as set forth in the Complaint are as follows:  On May 2, 2006, Sebastian Simmons ("Decedent") applied for life insurance with New York Life and designated Jones, his then-wife, as the sole primary beneficiary.  ECF No. 1 at ¶ 7.  He did not designate a contingent beneficiary.  *Id.*  New York Life issued to Decedent a group annual renewable term life and dependent insurance policy (the "Policy") in the amount of $75,000 (the "Death Benefit").  *Id.* at ¶ 8.  The Policy provided that the state of contract was Virginia, and further provided:

> Under Virginia law . . . a revocable beneficiary designation in a policy owned by one spouse that names the other spouse as beneficiary becomes void upon the entry of a decree of annulment or divorce, and the death benefit prevented from passing to a former spouse will be paid as if the former spouse had predeceased the decedent.  In the event of annulment or divorce proceedings, and if it is the intent of the parties that the beneficiary designation of the former spouse is to continue, an INSURED EMPLOYEE is advised to make certain that one of the following

1

courses of action is taken prior to the entry of a decree of annulment or divorce: (1) change the beneficiary designation to make it irrevocable; (2) change the ownership of the Policy; (3) execute a separate written agreement stating the intention of both parties that the beneficiary designation is to remain in effect beyond the date of entry of the decree of annulment or divorce; or (4) make certain that the decree of annulment or divorce contains a provision stating that the beneficiary designation is not to be revoked . . . .

*Id.* at ¶ 9. As to the Death Benefit, the Policy provided:

> Except as stated below, the Death Benefit will be paid to the designated beneficiary(ies). However, if at the time of the INSURED MEMBER'S death there is no surviving beneficiary for any designated share of the Death Benefit, such share will be paid to the OWNER, if living, otherwise to the lawful married spouse; children equally; parents equally; or brothers and sisters equally; or to the OWNER'S estate.

*Id.*

In July 2011, Decedent and Jones divorced. *Id.* at ¶ 10. The Divorce Decree between the parties upheld their Prenuptial Agreement, which was dated April 8, 2005. *Id.* The Prenuptial Agreement provided the following:

> Intended Husband agrees to designate irrevocably Intended Wife as fifty (50%) percent beneficiary of his FGLI Term Life Insurance Policy having an approximate face value of Two Hundred Fifty Thousand and 00/100 Dollar[s] ($250,000.00).

*Id.* at ¶ 11. The Prenuptial Agreement did not otherwise mention the Policy or life insurance policies acquired during the marriage. *Id.* It further provided:

> RIGHTS OF INHERITANCE: Except as specifically provided herein, each party does hereby waive and release all rights, claims, titles and interest, actual, inchoate, or contingent, which he/she might by reason of marriage acquire in the other's estate, including but not limited to right or claim of dower of curtesy or any other statutory substitute therefore as provided by the statutes of the Commonwealth of Pennsylvania or any state in which the parties or either of them may be domiciled; the right to any distributed share in the estate of the other should he/she die intestate; the right to take against the Will of the other; the right to act as administrator/administratrix of the estate of the other; the rights of surviving spouse under any retirement or deferred compensation plan; and rights provided by Pennsylvania Probate, Estate and Fiduciary 20 Pa. C.S.A. Section 101 et. seq., as amended or such other applicable law of the Commonwealth of Pennsylvania or any other state.

*Id.*

2

Decedent died on December 16, 2021. *Id.* at ¶ 12. On December 21, 2021, New York Life requested that Jones complete a claim form. *Id.* at ¶ 13. On March 7, 2022, Jones completed and submitted a claim form, identifying herself as the Decedent's ex-spouse and requesting that the Death Benefit be paid to her as the Policy's primary beneficiary. *Id.* at ¶ 14. On March 14, 2022, New York Life informed Jones that her claim was under review, noting that "since the state of Pennsylvania is a revocation state," that could automatically terminate her as beneficiary. *Id.* at ¶ 15. New York Life then informed Jones on April 5, 2022, that pursuant to Pennsylvania law, her designation as primary beneficiary of the Policy was automatically revoked upon divorce. *Id.* at ¶ 16.

On June 13, 2022, and again on October 13 and November 4, 2022, New York Life inquired with Simmons to determine whether she was related to the Decedent. *Id.* at ¶¶ 17, 23. On November 22, 2022, Simmons informed New York Life that she was Decedent's only child. *Id.* at ¶ 24. New York Life therefore sent her a claim form and survivorship affidavit. *Id.* Simmons submitted the claim form and survivorship affidavit in December 2022. *Id.* at ¶ 26.

Meanwhile, in June 2022, Jones had retained counsel to represent her regarding New York Life's denial of her claim to the Policy. *Id.* at ¶ 18. Jones's counsel provided New York Life with the Prenuptial Agreement, which New York Life reviewed. *Id.* at ¶¶ 18-19. On August 5, 2022, New York Life informed Jones's counsel that, since the Prenuptial Agreement was executed a year before the issuance of the Policy, the FEGLI policy referenced in the Prenuptial Agreement could not be the New York Life Policy, so Pennsylvania's revocation statute would apply. *Id.* at ¶ 20. Further correspondence ensued between New York Life and Jones's counsel, resulting in New York Life's receipt of a notice of a court date from Jones on December 7, 2022, which was scheduled for January 17, 2023, and which would purportedly address Jones's "Petition for Special Relief." *Id.* at ¶ 25. On December 14, 2022, New York Life informed Jones that unless the court

ordered otherwise, it would consider her rights revoked under Pennsylvania law. *Id.* at ¶ 27. That same day, New York Life informed Simmons that Jones contested the Policy. *Id.* at ¶ 28.

New York Life inquired with Jones over the following several months as to the status of the court hearing and kept Simmons updated as to any developments. *Id.* at ¶¶ 29-33. On February 12, 2024, Jones informed New York Life that she was no longer represented by that counsel, and on March 19, 2024, she provided New York Life with a summary of the basis of her claim to the Policy. *Id.* at ¶¶ 34-35. She claimed that a few months after she and Decedent wed, Decedent left federal employment, so the FEGLI policy was no longer in place. *Id.* at ¶ 35. She claimed that the two replaced the FEGLI policy with the New York Life Policy. *Id.*

Thus, on May 7, 2024, New York Life informed Jones and Simmons that it was unable to determine to whom the Death Benefit was payable and informed them of its intent to file an interpleader action if the two could not come to a resolution themselves. *Id.* at ¶ 36. Later that month, both Jones and Simmons separately informed New York Life that they each maintained their right to the Death Benefit. *Id.* at ¶¶ 37-38.

On October 10, 2024, New York Life brought this action for interpleader relief. Simmons filed her answer on November 13, 2024, *see* ECF No. 7, and, after default and New York Life's consent to opening of such default, Jones filed her answer and counterclaims against New York Life on June 8, 2025. *See* ECF No. 33. On June 12, 2025, New York Life moved to deposit funds with the Court and for discharge and attorneys' fees. *See* ECF No. 35. Jones opposed this motion. *See* ECF No. 37. On June 27, 2025, New York Life moved to dismiss Jones's counterclaims. *See* ECF No. 41.

## II.  **DISCUSSION**

"The typical interpleader action proceeds in two distinct stages. . . . During the first stage, the court determines whether the interpleader complaint was properly brought and whether to

discharge the stakeholder from further liability to the claimants. . . . During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *See Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 262 (3d. Cir. 2009) (internal citations omitted).  The first stage is at issue here.  Accordingly, I will first determine whether New York Life properly brought this interpleader complaint, entitling it to discharge from the action.  Then, I will determine whether Jones's counterclaims against New York Life require that I refrain from discharging New York Life.  If I find that New York Life may be discharged, I will then address attorneys' fees.

### A. Motion to Deposit and for Discharge

New York Life moves to deposit funds with the Court and for its discharge from the case, along with attorneys' fees.  Simmons has not objected to the motion, but Jones does object to New York Life's discharge.

#### a. Subject Matter Jurisdiction

I will first determine whether this case is properly brought within this Court's subject matter jurisdiction.  New York Life brings this interpleader action pursuant to 28 U.S.C. § 1335. *See* ECF No. 1 at ¶ 4.  Thus, I must first determine whether subject matter jurisdiction is proper pursuant to that statute.  28 U.S.C. § 1335(a) provides in relevant part:

> The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more . . . if
>
> (1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
>
> (2) the plaintiff has deposited such money or property or has paid . . . the amount due under such obligation into the registry of the court . . . .

I am satisfied that subject matter jurisdiction is proper here. The Policy provides for a Death Benefit of $75,000. *See* ECF No. 1 at ¶ 8. The potential claimants are diverse, as Jones is a citizen of Pennsylvania, *see id.* at ¶ 2; ECF No. 33 at ¶ 2, and Simmons is a citizen of Maryland, *see* ECF No. 1 at ¶ 3; ECF No. 7 at ¶ 3. Although New York Life has not yet deposited the funds with the Court, it has custody over the funds and is appropriately moving to deposit them. Therefore, I hold that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1335 and will be perfected upon New York Life's deposit of the funds with the Court.

### b. Whether Interpleader is Proper

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (internal citations omitted). It allows a stakeholder who "admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] . . . to file suit, deposit the property with the court, and withdraw from the proceedings." *Id.* The claimants "are left to litigate between themselves." *Id.*

"The key prerequisite to bringing an action in interpleader is that there be two or more claimants to the fund who are 'adverse' to each other." *Allstate Settlement Corp. v. United States*, No. 07-5123, 2008 WL 2221897, at *3 (E.D. Pa. May 28, 2008) (quoting *New Jersey Sports Prods., Inc. v. Don King Prods., Inc.*, 15 F. Supp. 2d 534, 539 (D.N.J. 1998)). "This requirement is not met where (a) one of the claims clearly is devoid of substance; (b) one of the claimants is under the control of the stakeholder or has dropped his claim, such that the fear of multiple liability is baseless; or (c) the claims are not asserted against the same fund, or the stakeholder may be liable to both claimants." *Id.*

New York Life asserts that it is "an innocent, neutral, and disinterested stakeholder in this matter." ECF No. 35 at ¶ 8. Jones disputes this, arguing that she "has filed a Counterclaim against

6

[New York Life] and has alleged that the policy should have been turned over in its entirety to [Jones] based on the documentation they received when she properly filed her claim for the insurance proceeds . . . . Additionally, Defendant Simmons *only* filed a claim for the proceeds after [New York Life] denied [Jones] the policy proceeds and sought out an alternative beneficiary." *See* ECF No. 37 at ¶ 8. Jones's argument fails, as discussed further below. *See* Section B, *infra*. Indeed, Jones's purported counterclaims against New York Life merely assert that New York Life should have turned over the policy proceeds to her rather than seeking out Simmons, a descendent of Decedent, and initiating this interpleader action. *See Hovis*, 553 F.3d at 264-65 ("[E]ach of [the defendant's] counterclaims concern [plaintiff's] failure to resolve its investigation in his favor and pay out the life insurance proceeds to him. . . . As such, none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle.").

It is true that "it is a general rule that a party seeking interpleader must be free from blame in causing the controversy" in order to be discharged. *Id.* at 263 (quoting *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988)). But Jones has not pointed this Court to, nor have I independently found, any authority to indicate that an insurer seeking out a possible descendant of the deceased is equivalent to an insurer "causing the controversy." Rather, as the Third Circuit has noted, "that rule is meant to prevent a tortfeasor, facing claims from multiple parties, from using the interpleader device to cap its liability." *Id.* at 263 n.4. Jones has not alleged any such tortious behavior. I thus hold that New York Life meets the requirement of being a disinterested stakeholder.

The next question is whether Jones and Simmons are adverse to each other. It is undisputed that both Simmons and Jones submitted claim forms for the Death Benefit. *See* ECF No. 35 at ¶ 4. It is of no matter that Simmons filed her claim "*only after* being advised by New York Life who

7

sought out Defendant Simmons and advised her that a life insurance policy existed on the life of the Decedent," as Jones argues. *See* ECF No. 37 at ¶ 4. Instead, based on the purported legal uncertainty as to who is entitled to the policy, as set forth in the Complaint, I find that there is at least some likelihood that New York Life would have faced a suit from Simmons relating to the same funds. *See, e.g.*, *Hovis*, 553 F.3d at 263. I thus hold that this interpleader action was properly brought. Whether New York Life will be prevented from discharge due to Jones's counterclaims will be addressed in the next section.

### B. Motion to Dismiss Counterclaims

Jones purports to bring six counterclaims against New York Life, set forth as follows: (I) Prenuptial Agreement and the Divorce Code of Pennsylvania 23 Pa. C.S.A. § 3502 and Order of the State Court; (II) Failure to Attach Insurance Policy in Effect at the Time of its Execution; (III) Choice of Law Pennsylvania Law vs. Virginia Law; (IV) Pennsylvania Court Order; (V) Full Faith and Credit Clause of the United States Constitution; and (VI) Additional Relief. *See* ECF No. 33. New York Life moves to dismiss the counterclaims. *See* ECF No. 41. New York Life argues that Jones's counterclaims should be dismissed first, because they are not independent of the underlying interpleader action, and second, because each of the counterclaims fails to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). New York Life succeeds on both arguments.

I will begin with the latter of the two arguments. Jones's counterclaims are dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Jones must state a plausible claim for relief for her counterclaims to survive a motion to dismiss. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, not one of the purported counterclaims states an actual cause of action. Count I sets forth facts about the prenuptial agreement entered into

between Jones and the decedent and argues that "for this Court to rule that the proceeds of the insurance policy should go to anyone other than Jones fails to take into consideration the bargained for exchange and agreement between Jones and the Decedent." ECF No. 33 at ¶ 97. This is merely an argument as to why Jones should receive the Death Benefit and does not state a claim as against New York Life. Count II is a purported argument that New York Life did not attach the correct policy to the Complaint. Again, this is not a cause of action. Count III sets forth Jones's arguments as to what the outcome of the case should be if Pennsylvania or Virginia law applies. This is an argument appropriate for a dispositive motion, not as a cause of action against New York Life. Counts IV and V similarly do not state a cause of action, but instead argue that this Court should grant deference to a family court decision upholding the Prenuptial Agreement. Count VI sets forth a litany of reasons that the action is barred, including the doctrines of detrimental reliance, unjust enrichment, waiver, and estoppel. These appear to be attempts at affirmative defenses, but they merely amount to conclusory statements and set forth no factual basis for asserting them. I thus hold that none of Jones's purported counterclaims set forth a basis for relief as against New York Life and dismiss them with prejudice.

Even if Jones had stated proper causes of action, I would not allow them to proceed because they are not independent of the interpleader action. When a stakeholder properly brings an interpleader action, it is shielded from any liability relating to those claims. *See Hovis*, 553 F. 3d at 265. Accordingly, when a defendant's counterclaims concern the stakeholder's failure to resolve the case in that defendant's favor before bringing the interpleader action, those counterclaims must fail because they are not "truly independent" of the issue the interpleader action was brought to resolve. *See id.* at 264-65. Here, each of Jones's counterclaims merely set forth legal arguments as to why she should be entitled to the policy and not Simmons, whether it be due to interpretation of the Prenuptial Agreement, choice of law, or deference to prior court

9

rulings. These fall squarely within the type of arguments that adverse claimants make in an interpleader action and certainly do not establish any potential liability on behalf of New York Life. Therefore, Jones has failed to state any claims that are independent of the interpleader action.

### C. Attorneys' Fees and Costs

Having determined that none of Jones's counterclaims survive New York Life's Motion to Dismiss and New York Life can therefore be discharged from this action, I next determine whether it is entitled to attorneys' fees. "The prevailing principle in interpleader actions brought in the federal courts . . . is that it is within the discretion of the court to award the stakeholder costs, including reasonable attorneys fees, out of the deposited fund." *Prudential Ins. Co. of America v. Richmond*, No. 06-525, 2007 WL 1959252, at *4 (D.N.J. July 2, 2007), *aff'd sub nom. Prudential Ins. Co. of America v. Pryor*, 226 F. App'x 232 (3d Cir. 2009). "A court has the discretion to award an interpleader plaintiff attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability." *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 431 (3d Cir. 2003). Courts routinely deny attorneys' fees in interpleader actions where the bringing of an interpleader action to determine the proper beneficiary of a life insurance policy requires the court to perform an act that is within the ordinary course of the plaintiff's business. *See, e.g.*, *Reliastar Life Ins. Co. v. Moore*, No. 08-cv-1942, 2010 WL 773457, at *5 (M.D. Pa. Mar. 1, 2010); *AIG Life Ins. Co. v. Rafferty*, No. 07-cv-3099, 2008 WL 1959697, at *1 (E.D. Pa. May 6, 2008) ("Insurance companies must routinely determine the appropriate recipient in cases involving multiple claimants to insurance benefits. . . . Costs associated with doing so cannot be shifted to the fund nor to the claimants."). Accordingly, because it is in the ordinary course of New York Life's business for it to determine the appropriate recipient of insurance benefits, I will deny its motion as it pertains to attorneys' fees.

**III.     CONCLUSION**

For the reasons discussed more fully above, New York Life's Motion to Deposit and for Discharge and Attorneys' Fees is granted in part and denied in part.  New York Life's Motion to Dismiss Jones's Counterclaims is granted.

An appropriate Order follows.